IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.                              Criminal Action No. 2:21CR36-1

WENDELL BEVERLY,

        Defendant.


MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

Pending before the Court is the objection of the defendant, Wendell Beverly ("Beverly"), to the Government's notice of intent to present 404(b) evidence [ECF No. 184]. Also pending are the defendant's three motions in limine [ECF Nos. 153, 154, 192]. The Court heard evidence and argument on these matters at the pretrial conference on January 9 and 10, 2023 and will address each in turn.

I.   Defendant's Objection to the Government's Notice of Intent to Introduce 404(b) Evidence [ECF No. 184]

Count Two of the Indictment alleges that, on January 29, 2019, and January 31, 2019, Beverly unlawfully distributed two firearms to a known felon, the confidential informant [ECF No. 1]. In support of this count, the Government intends to introduce evidence that, less than one month later, Beverly attempted to make a sale of another firearm to the same confidential informant [ECF No. 138].

USA v. BEVERLY                                          2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

According to the Government, its evidence will show that following the first sale, Beverly again contacted the confidential informant to ask if he would be interested in buying a third firearm. Id.  Beverly sent a photograph of the firearm with the purchase price. Id.  As previously arranged, the confidential informant went to Beverly's home to complete the transaction on February 26, 2019.  Their interaction was captured by video and audio recording. Id.  The sale could not be completed, however, because Beverly was unable to obtain the firearm. Id. During this attempted sale, Beverly and the confidential informant discussed rescheduling the transaction, the firearm's worth, prior sales between Beverly and the confidential informant, and Beverly's access to other firearms and explosives. Id.

Beverly objects to the admission of this evidence pursuant to Federal Rule of Evidence 404(b) [ECF No. 184].  He contends that the disputed evidence is irrelevant to establish a motive because the Government cannot prove that he actually made a profit from any completed or attempted sale of a firearm. Id.  Further, he asserts that because the February 2019 attempted sale occurred after the events alleged in the Indictment, it is not a "prior bad act" to which Rule 404(b) applies. Id.

The Government contends that this evidence is not subject to 404(b) because the February 2019 attempted sale is intrinsic to

USA v. BEVERLY                                           2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

the offenses charged in the Indictment [ECF No. 188].
Alternatively, it asserts that the disputed evidence is admissible
under Rule 404(b) because it demonstrates Beverly's intent,
knowledge, and plan to sell firearms to the confidential informant
on multiple occasions. Id. It also asserts that this evidence
establishes Beverly's motive for selling the firearms, to turn a
profit so that he could purchase methamphetamine. Id.

Pursuant to Rule 404(b), "[e]vidence of a crime, wrong, or
other act is not admissible to prove a person's character in order
to show that on a particular occasion the person acted in
accordance with the character." Fed. R. Evid. 404(b)(1). Such
evidence, however, "may be admissible for another purpose, such as
proving motive, opportunity, intent, preparation, plan, knowledge,
identity, absence of mistake, or lack of accident."
Id. § 404(b)(2).

Acts that are intrinsic to the charged offense, by contrast,
"do not fall under Rule 404(b)'s limitations on admissible
evidence." United States v. Denton, 944 F.3d 170, 186 (4th Cir.
2019). "[E]vidence of other bad acts is intrinsic if, among other
things, it involves the same series of transactions as the charged
offense, or if it is necessary to complete the story of the crime
on trial." United States v. Webb, 965 F.3d 262, 266 (4th Cir.
2020). Rule 404(b) only applies where the challenged evidence is

USA v. BEVERLY                                                    2:21CR36-1

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
## MOTIONS IN LIMINE AND OBJECTIONS

"separate from or unrelated to the charged offense." United States

v. Brizuela, 962 F.3d 784, 793 (4th Cir. 2020)

Beverly's February 2019 attempted sale of a firearm is related

to the charges against him in the Indictment.  Beverly arranged

the sale of firearms in both January and February 2019.  On both

occasions, the firearms came from the same source, were to be

distributed to the same confidential informant, and Beverly had

the same motive.  Beverly also discussed his continued access to

firearms and explosives on each occasion.  For these reasons,

Beverly's conduct in February 2019 is intrinsic to, or part of the

same series of transactions as, the charged offenses.  The Court

therefore concludes that this evidence is not subject to the

limitations of Rule 404(b).

Alternatively, the Court finds that the disputed evidence is

admissible even if it is subject to Rule 404(b).  "Rule 404(b) is

an inclusive rule that allows admission of evidence of other acts

relevant to an issue at trial except that which proves only

criminal disposition." United States v. Hernandez, 975 F.2d 1035,

1038 (4th Cir. 1992) (quotation omitted). "Whether to admit

evidence under Rule 404(b) is within the discretion of the district

court[.]" United States v. Watford, 894 F.2d 665, 671 (4th Cir.

1990)).  Other bad acts are admissible under Rule 404(b) if they

are "(1) relevant to an issue other than character; (2) necessary;

**USA v. BEVERLY**                                          **2:21CR36-1**

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

and (3) reliable." United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988).  "Even if the evidence is admissible under this rule, its probative value must be weighed against the danger of undue prejudice aroused by the evidence." Id.; see also Fed. R. Evid. 403.

Here, Rule 404(b) applies to the disputed evidence even though the attempted sale occurred approximately one month after the events alleged in the Indictment. See United States v. Briley, 770 F.3d 267, 275 (4th Cir. 2014) ("Rule 404(b) permits the admission of evidence of not only prior but also subsequent acts.").

Further, evidence related to the attempted sale is relevant to several issues other than Beverly's criminal disposition. Specifically, it demonstrates his pattern of distributing firearms to the confidential informant, whom he knew to be a felon.  It also relates to his motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident in doing so.  The disputed evidence relates to Beverly's motive and intent to sell firearms as well as his ability to obtain firearms and other explosives for distribution.  The Court also finds that this evidence is necessary to the Government's case-in-chief and sufficiently reliable.  Thus, the disputed evidence is admissible under Rule 404(b).

USA v. BEVERLY                                          2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTIONS IN LIMINE AND OBJECTIONS

Finally, the disputed evidence should not be excluded pursuant to Rule 403 because its significant probative value is not substantially outweighed by confusion or unfair prejudice. This is especially so given the similarity between the completed transaction and the attempted sale.

For these reasons, the Court **OVERRULES** Beverly's objection to the Government's 404(b) evidence.

## II. Defendant's Motion in Limine to Exclude Facebook Posts [ECF No. 154]

In its second amended exhibit list, the Government identified "Screenshots taken from defendant Beverly's Facebook profile page" as its proposed exhibit 9 [ECF No. 160]. Beverly moves to exclude this exhibit as irrelevant, arguing that there is no temporal proximity between his remarks on Facebook and the charges against him in the Indictment [ECF No. 154]. He also contends that the remarks should be excluded as unfairly prejudicial. Id.

The Government opposes Beverly's motion, asserting that his remarks on Facebook are relevant to Count Three of the Indictment, which charges him with unlawfully possessing a firearm as a user of controlled substances [ECF No. 166]. According to it, his Facebook statements relate directly to his status as a user of controlled substances. Id. The Government also proposed a version of its exhibit 9 that has been redacted so that only Beverly's

USA v. BEVERLY                                    2:21CR36-1

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

comments related to use and distribution of controlled substances remain. Compare ECF No. 166-1 with ECF No. 166-2.

Evidence is admissible if it is relevant, or "has any tendency to make a fact more or less probable." Fed. R. Evid. 401-402.  But even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Count Three of the Indictment alleges that, on or about January 31, 2019, Beverly violated 18 U.S.C. § 922(g)(3) by possessing a firearm as an unlawful user of methamphetamine [ECF No. 1].  To obtain a conviction on this charge, the Government must prove beyond a reasonable doubt that (1) Beverly was an unlawful user of, or addicted to, methamphetamine; (2) Beverly knew he was an unlawful user of, or addicted to, methamphetamine; (3) Beverly knowingly possessed a firearm; and (4) the firearm had traveled in interstate commerce at some point during its existence. Section 922(g)(3) requires the Government to "prove that [Beverly's] drug use was sufficiently consistent, prolonged, and close in time to his gun possession to put him on notice that he qualified as an unlawful user under the terms of the statute."

USA v. BEVERLY                                              2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

United States v. Hasson, 26 F.4th 610, 615 (4th Cir. 2022) (citation omitted).

Several of Beverly's remarks on Facebook are relevant to elements one and two of the § 922(g)(3) charge against him. On August 31, 2018, one of Beverly's Facebook friends commented on one of his posts, stating that he had given Beverly vehicle parts in exchange for "dope" [ECF No. 166-2 at 6-7]. Beverly responded that his friend had never given him the additional "two zip" he wanted and that the "cops" know "I'm high I stay that way." Id.

These statements are probative as to whether Beverly consistently and prolongedly used methamphetamine and thus would have been on notice that he qualified as a prohibited person under § 922(g)(3). They also are probative as to whether Beverly habitually used methamphetamine around the time frame alleged in the Indictment. Statements Beverly posted to Facebook on August 31, 2018, approximately four months prior to the conduct alleged in the Indictment, are not so temporally distant as to as render them irrelevant. Thus, Beverley's remarks on Facebook related to his use of controlled substances are admissible under Rules 401 and 402.

But exhibit 9 also contains several comments by Beverly and his Facebook friends that are inadmissible either because they are irrelevant to the issues in this case, or because they carry a

USA v. BEVERLY                                          2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

risk unfair prejudice, confusion of the issues, or waste of time. The Government's proposed redactions eliminate these statements, however. The Court therefore finds that the Government's redacted exhibit is admissible because it includes only Beverly's relevant Facebook statements and its probative value is not substantially outweighed by any of the factors identified in Rule 403.

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Beverly's motion [ECF No. 154]. The motion is granted to the extent that it relates to the Government's unredacted exhibit 9 and denied as it relates to the Government redacted exhibit 9.

## III. Defendant's Motion in Limine to Exclude Untimely Disclosed Witness Testimony [ECF No. 192]

In anticipation of trial, the Government filed its witness and exhibit lists on December 15, 2022 [ECF Nos. 128, 129]. It then amended its witness and exhibit lists on December 22, 2022 [ECF Nos. 150, 151], and January 4, 2023 [ECF No. 160, 161]. On January 23, 2023, the Government provided its eighth supplemental discovery disclosure to Beverly [ECF No. 187]. Thereafter, on January 30, 2023, the Government filed its third amended witness, adding Ashley Simmons ("Simmons") and Alice Wilkinson ("Wilkinson") to testify about their knowledge of Beverly's drug use [ECF No. 191].

USA v. BEVERLY                                              2:21CR36-1

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
## MOTIONS IN LIMINE AND OBJECTIONS

Beverly moves to exclude Simmons and Wilkinson as untimely [ECF No. 192]. In support, he states that they were disclosed only five (5) business days before trial and his counsel would not have enough time to investigate the newly disclosed evidence[1] in support their testimony prior to trial. Id. The Government did not respond.

The Court's scheduling order required each party to file, no later than December 15, 2022, a "list of probable witnesses and possible witnesses" that contained their full name and address as well as a brief statement of the subject matters to be covered by each witness [ECF No. 119]. Likewise, Local Rule of Criminal Procedure 16.07 requires the parties to file their lists of witnesses, including the full name and address of each witness as well as a summary of their testimony, "[n]o later than fourteen (14) days before trial."

Here, although the Government disclosed its initial exhibit and witness lists on time, it supplemented the discovery in this case fourteen (14) days before trial and added two witnesses seven (7) days before trial [ECF Nos. 187, 191]. These late disclosures violated the Court's scheduling order and the local rules. They also deprived Beverly's counsel of an adequate time to prepare for

---

[1] Beverly contends that the Government's eighth supplemental discovery disclosure included additional jail calls and statements from Simmons and Wilkinson.

USA v. BEVERLY                                              2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

trial because she would not have had a reasonable opportunity to interview Simmons or Wilkinson or prepare for their cross-examinations.   Thus, allowing the newly disclosed evidence and testimony would be unduly prejudicial to Beverly and the Court **GRANTS** his motion to exclude the disputed evidence at trial [ECF No. 192].

### IV.  Defendant's Motion in Limine to Exclude Statements to Law Enforcement [ECF No. 153]

Beverly moves to exclude statements he made to law enforcement officers during a custodial interview that occurred at the Tygart Valley Regional Jail on May 24, 2019 [ECF Nos. 153, 183]. He seeks to exclude as irrelevant and unduly prejudicial any statement indicating that he was incarcerated at the time of the interview or the reason for his incarceration as well as any statement made at the conclusion of the interview. Id.  He also seeks to exclude any statement made after he asserted his right to remain silent as violative of the Fifth Amendment.  Id.

The Government agrees that any statements concerning why he was incarcerated, or any statements made at the end of the interview are not relevant [ECF Nos. 165, 198].   The Court therefore **GRANTS** Beverly's motion to exclude these statements as irrelevant and unfairly prejudicial.

USA v. BEVERLY                                      2:21CR36-1

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

However, the Government opposes the remainder of Beverly's motion, arguing that Beverly never unambiguously asserted his right to remain silent during the interview [ECF Nos. 165, 198]. For the reasons that follow, the Court **GRANTS** Beverly's motion to exclude statements obtained in violation of the Fifth Amendment.

### 1.   Factual Background

The Court finds the following facts based on the parties' written submissions and the evidence received during the pretrial conference.  In the winter of 2018, the Mountain Region Drug and Violent Crimes Task Force ("the task force") began investigating the distribution of illegal firearms and controlled substances in the Barbour County area.  Members of this task force included Steve Worthy, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and Gene Smithson, a special agent with the United States Forest Service.

In May 2019, Beverly was arrested during the execution of a search warrant at the residence of Joe Hanifan.  On May 24, 2019, Agents Worthy and Smithson, went to Tygart Valley Regional Jail ("TVRJ") to interview Beverly regarding their ongoing investigation.  Agent Worthy was the lead agent and primary interviewer and Agent Smithson was the secondary interviewer.  They recorded the interview by audio.

USA v. BEVERLY                                     2:21CR36-1

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

TVRJ has several small conference rooms where members of the public can meet with inmates.

Pursuant to TVRJ protocol, inmates must be supervised by a correctional officer at all times.  Once an inmate is brought to a conference room, they cannot leave until the officer returns. Correctional officers typically report to their control room after escorting an inmate.  To signal the end of an interview, the interviewer generally goes into the hallway and waves to get the attention of a correctional officer.

When Agents Worthy and Smithson arrived at TVRJ on May 24, 2019, correctional officers directed them to one of the conference rooms before bringing Beverly to meet them.  The room accommodated one table and four chairs.  The agents sat together on one side of the table and Beverly sat across from them, closest to the door.

Agent Worthy began the interview by providing Beverly a written waiver of his Miranda rights.  In relevant part, this waiver advised Beverly that he had the right to remain silent and that if he decided to answer questions without a lawyer present, he had the right to stop answering at any time. See ECF No. 165-1.  Beverly indicated that he understood these rights and signed the waiver.

Agent Worthy then asked Beverly why he was incarcerated and Beverly responded that he had been arrested in Phillipi because

13

USA v. BEVERLY                                                    2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

controlled substances had been found at his friend's house.  Agent

Worthy next asked Beverly questions related to the task force's

ongoing investigation and the following exchange occurred:

> WORTHY:    . . . Gene and I are interested in, you know,
>            what you can tell us about meth and stuff over
>            around Philippi. Think you'd be able to talk
>            to us about that a little bit?
>
> BEVERLY:   No.
>
> WORTHY:    How about guns? You know anything about guns
>            over there?
>
> BEVERLY:   I've got guns, but I don't know about there
>            (audio interference).
> WORTHY:    Well, it's my understanding that there's
>            several people over there that are moving a
>            pretty good bit of meth around Philippi and
>            like to dabble in some stolen guns and I was
>            hoping that you could help me with that.
>
> BEVERLY:   I can't help you with that.
>
> WORTHY:    You don't know anybody that Gene and I should
>            be taking a look at?
>
> BEVERLY: No, sure don't.
>
> WORTHY:    How about you, Mr. Beverly, are you involved
>            in selling guns or anything like that?
>
> BEVERLY:   Excuse me, I think this is over with. I'm going
>            back to my cell.

ECF No. 165-2 at 2.[2]

---

[2] This excerpt comes from an unofficial transcript prepared by the
Government prior to the pretrial conference.  Beverly did not object to
the admission of this unofficial transcript and relied on it in support
of his motion in limine.

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

According to the agents, neither understood what Beverly had said.  They exchanged a look and Agent Worthy stated, "I didn't hear what you said, sir."  Beverly then stood up, moved toward the door, and stated "I'm going back to my cell." Agent Worthy responded "alright," and Agent Smithson stood and directed Beverly to wait until a correctional officer came to get him.  Agent Worthy repeated this directive. Beverly complied and retook his seat.[3]  Neither agent attempted to get the attention of a correctional officer.

Both agents testified at the pretrial conference that Beverly was not permitted to leave the interview at this point and that their focus shifted to officer safety.  Agent Smithson testified that he believed that Beverly intended to leave the room when he stood and moved toward the door, but that he would not have allowed Beverly to do so because it was the agents' responsibility to maintain control in the room.  Agent Smithson also testified that Beverly's conduct

---

[3] Specifically, during this exchange the parties stated:

    SMITHSON: You wait right here 'til they come get you.

    WORTHY: Yes, you gotta wait 'til they come get you.

    BEVERLY: . . . 'til they come get me?

    WORTHY: Yes.

ECF No. 165-2 at 2.

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

gave him the impression that Beverly wanted to terminate the interview.

Agent Worthy testified that, at this point, he knew that Beverly was attempting to leave the interview room and return to his cell. He also testified, however, that due to the confusion in the room, he did not know whether Beverly wished to continue the interview once he sat back down.

After a brief pause, Agent Worthy asked Beverly, "So, you done talking to us?" and Beverly responded, "I can't do you all no good." According to Agent Worthy, he asked this question only to clarify whether Beverly wanted to terminate the interview. Agent Smithson testified that he believed that Beverly wished to continue after he responded to this question. The conversation between Agent Worthy and Beverly then continued:

WORTHY:   Why not?

BEVERLY:  I don't know anything about what you're talking about.

WORTHY:   Nothing at all?

BEVERLY:  No. I don't run guns and I don't fucking deal dope.

WORTHY:   You don't buy guns and you don't deal dope?

BEVERLY:  No.

WORTHY:   Have you ever sold any guns?

USA v. BEVERLY                                        2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

BEVERLY:   Have I sold any guns?

WORTHY:    Yes.

BEVERLY:   Oh, I've sold a few.

WORTHY:    Sold a few.

BEVERLY:   I've bought a few. Ok? I like guns. I like to
           buy 'em. I like to play with 'em. I like to
           collect 'em. I like to do what I gotta do with
           'em.

WORTHY:    Ok.
BEVERLY:   And I had two I had to get rid of 'em. I can't
           afford 'em no more. So you're trying to accuse
           me of drug running and gun running?

WORTHY:    No, sir. That's not what I --

BEVERLY:   Why else would you be asking me those
           questions... would you be asking me those
           questions, ok? I talked to the US Marshalls
           about my friend come up missing and they
           didn't wanna hear nothing I had to say, ok, so
           you don't wanna hear nothing I gotta say now.

WORTHY:    Well, Mr. Beverly, sir...

BEVERLY:   Good day, sir.

WORTHY:    Can I finish?

BEVERLY:   You can finish whatever you want as soon as I
           leave.

WORTHY:    I'm not a US Marshal. I don't know anything
           about that situation. So, I would appreciate
           it if you would extend me the courtesy of not
           being rude because I don't know anything about
           that and I haven't accused you of anything
           since I've been sitting here. I've simply
           asked if you could point me in the right
           direction of where I need to be looking. Have
           I come out and said, Mr. Beverly, I think you
           over there hustling dope.

USA v. BEVERLY                                                    2:21CR36-1

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS**

---

BEVERLY:   I think I said . . . I think I said I don't
           know anything about (inaudible).

WORTHY:    Ok. Fair enough.

BEVERLY:   Alright. Can you shut the fuck up?

WORTHY:    Yes, sir.

SMITHSON:  Yea, alright, listen, I think we're done.

BEVERLY:   We are.

. . .

BEVERLY:   . . . Ok. I just woke the fuck up to get
           questioned by two federal agents about the
           fucking shit I'm not into. I just said I
           didn't, and you are continuing on talking to
           me. I'll talk any way I want to (inaudible
           []).

SMITHSON:  Ok, it's all good man. We don't have to talk
           anymore. It's good. No problem.

BEVERLY:   Hey (snap fingers twice) . . . I need up outta
           here now.

GUARD:     What is it?

BEVERLY:   I need up outta here fast as you can get me
           outta here, ok? Please. I cannot no longer
           control my temper with these agents, please.

Id. at 2-4. A correctional officer then escorted Beverly out of

the interview room.

     At the pretrial conference, both agents testified that they

had significant law enforcement experience and had been trained to

recognize when a defendant was asserting his right to remain

silent.  Neither believed that any of Beverly's statements or

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

actions invoked his right to remain silent.  They therefore saw no need to terminate the interview on this basis.  Instead, they ended the interview when Beverly became agitated and it was clear that continued questioning would not be productive.

### 2.  Parties' Positions

Beverly argues that he invoked his right to remain silent on several occasions during the interview.  For example, he limited Agent Worthy's areas of inquiry, he stated that the interview was over, he attempted to leave the room, and he stated twice that he wished to return to his cell.  Based on these invocations, Beverly asserts that the agents should have ended the interview but continued to question him.  he also contends that he invoked his right to remain silent during the continued questioning by stating "good day" in an attempt to end the interview and by indicating that he would no longer listen to the agents.  Beverly asks the Court to exclude all of his statements following his attempt to end the interview due to the agents' violation of his constitutional rights.

The Government, on the other hand, contends that Beverly did not unambiguously invoke his right to remain silent during the interview.  Its position is that the agents could not hear or understand Beverly when he stated that the interview was over and that he wished to return to his cell.  Then, after they confirmed

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

what he had stated, they were unsure if he wished to continue because he retook his seat and answered their further questions.

### 3.   Applicable Law

The Fifth Amendment of the United States Constitution provides defendants with the right against self-incrimination. Statements obtained from a defendant during custodial interrogation are presumptively compelled in violation of this right and are therefore inadmissible in the Government's case-in-chief. <u>Miranda v. Arizona</u>, 384 U.S. 436, 457-58 (1966). The Government can overcome this presumption of coercion by showing that law enforcement officers (1) adequately informed the defendant of his <u>Miranda</u> rights[4] and (2) obtained a waiver of those rights. <u>Id.</u> at 444; <u>United States v. Cardwell</u>, 433 F.3d 378, 388-89 (4th Cir. 2005).

If a defendant "indicates <u>in any manner, at any time</u> prior to or during questioning, that he wishes to remain silent, the interrogation <u>must cease</u>." <u>United States v. Abdallah</u>, 911 F.3d 201, 210 (4th Cir. 2018) (citing <u>Miranda</u>, 384 U.S. at 473-74) (emphasis in original). The defendant's invocation of his right to remain silent, thereby cutting off questioning, must be

---

[4] The defendant must be informed that he has the right to remain silent, anything he says can be used against him, he has the right to an attorney, if he cannot afford an attorney, one will be appointed to him. <u>Miranda</u>, 384 U.S. 436, 444.

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS

"unambiguous." Id. (citing Berghuis v. Thompkins, 560 U.S. 370, 381–82 (2010). An invocation is unambiguous when a "reasonable police officer under the circumstances would have understood" that the defendant intended to invoke his Fifth Amendment rights. Tice v. Johnson, 647 F.3d 87, 107 (4th Cir. 2011).

To determine whether the defendant's invocation is ambiguous, the Court considers whether the "request [itself] . . . or the circumstances leading up to the request would render [the request] ambiguous[.]" Smith v. Illinois, 469 U.S. 91, 98 (1984) (emphasis added). The Court cannot, however, "cast ambiguity on an otherwise clear invocation by looking to circumstances which occurred after the request." United States v. Abdallah, 911 F.3d 201, 211 (4th Cir. 2018) (emphasis in original).

**4. Analysis**

It is undisputed that the challenged statements were made during a custodial interrogation and that Beverly was properly advised of, and waived his, Miranda rights. The only issue remaining is whether Beverly unambiguously revoked this waiver at any point during the interview. The Court concludes that he did.

At the outset of the interview, Beverly answered the agents' questions about the circumstances surrounding his arrest and incarceration. But when the agents began questioning him about the task force's investigation he selectively invoked his right to

USA v. BEVERLY                                    2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

remain silent by refusing to answer questions about the distribution of methamphetamine in the Phillipi area and by refusing to identify individuals that might been involved in selling firearms. See United States v. Hamidullin, 114 F. Supp. 3d 388, 396 (E.D. Va. 2015) ("[A] defendant may selectively waive his Miranda rights by agreeing to answer some questions, but not others) (citing Michigan v. Mosley, 423 U.S. 96, 103-04 (1975)).

Immediately thereafter, Agent Worthy asked Beverly, "[h]ow about you, Mr. Beverly, are you involved in selling guns or anything like that?" To which Beverly responded, "[e]xcuse me, I think this is over with. I'm going back to my cell." With this statement Beverly unambiguously invoked his right to remain silent, thereby ceasing all questioning.

Even though the agents might not have heard or understood this statement, Beverly's subsequent actions also unambiguously indicated that he wished to invoke his right to remain silent. After being asked to repeat himself, Beverly stood up, moved toward the door, and stated "I'm going back to my cell." The agents testified that they believed Beverly would have left the room if they had not prevented him from doing so. Although the agents directed Beverly to wait for an escort, neither attempted to get the attention of a correctional officer. Agent Smithson testified that he believed Beverly wanted to terminate the interview at this

USA v. BEVERLY                                              2:21CR36-1

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
### MOTIONS IN LIMINE AND OBJECTIONS

point.  Complying with the agent's directives, Beverly stayed in the room and returned to his seat.

Beverly's attempt to leave the conference room combined with his statement that he was going back to his cell, is the equivalent of to him stating that he had nothing more to say.  See e.g., Tice v. Johnson, 647 F.3d 87, 107 (4th Cir. 2011) (holding that "I have decided not to say any more," was an unambiguous invocation of the defendant's right to remain silent) (colleting cases).  This is especially so based on Beverly's refusal to answer the series of questions immediately preceding his decision to terminate the interview.  Smith, 469 U.S. at 98.  Thus, a reasonable officer under the circumstances would have understood Beverly's actions and statements to mean that he no longer wished to be interviewed and therefore, questioning should have ceased.

That Beverly answered Agent Worthy's subsequent questions is irrelevant.  The Court cannot cast ambiguity on Beverly's clear invocation of his right to remain silent by "looking to circumstances which occurred after the request." Abdallah, 911 F.3d at 211 (4th Cir. 2018).

For the reasons stated, the Court **GRANTS** Beverly's request to exclude statements obtained in violation of this Fifth Amendment rights.

USA v. BEVERLY                                                    2:21CR36-1

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTIONS IN LIMINE AND OBJECTIONS**

**V.**

For the foregoing reasons, the Court:

(1) **OVERRULES** Defendant's Objection to the Government's Notice of Intent to Introduce 404(b) evidence [ECF NO. 184];

(2) **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion in Limine to Exclude Facebook Posts [ECF No. 154];

(3) **GRANTS** Defendant's Motion to Exclude Untimely Witnesses [ECF No. 192]; and

(4) **GRANTS** Defendant's Motion in Limine to Exclude Statements to Law Enforcement [ECF No. 153].

The Clerk is directed to forward a copy of this Order to all counsel of record by electronic means.


Entered:  February 3, 2023


THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA